**In re TENNA CORPORATION, Debtor.**

**GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,**

v.

**TENNA CORPORATION, Defendant.**

Bankruptcy No. B 79–2521.
Adv. No. B 80–0226.

United States Bankruptcy Court,
N. D. Ohio, E. D.

Jan. 28, 1981.

---

Edward R. Brown, Cleveland, Ohio, for plaintiff.

Marvin A. Sicherman, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

This cause is before the Court on the complaint of General Electric Credit Corporation and the answer and counterclaim of Tenna Corporation, hereinafter referred to as GECC and TENNA, respectively. The parties were involved in two transactions for manufacturing equipment. The filing of TENNA'S Chapter 11 reorganization proceedings precipitated GECC'S "Complaint for Reclamation or for Relief from Stay and Request for Adequate Protection" for the equipment. TENNA'S answer and cross-complaint maintains GECC is entitled to no relief since the transactions violated the Ohio Retail Installment Sales Act, commonly referred to as ORISA. The issue is whether the transactions denominated as "Lease Agreements" are loans as GECC alleges or sales covered by ORISA with its attendant penalties as TENNA asseverates.

Attorneys Edward R. Brown and Marvin A. Sicherman representing GECC and TENNA, respectively, have stipulated the facts,

submitted extensive briefs and presented cogent oral arguments. The approved stipulations with pertinent documents annexed are attached hereto. [Matter omitted for purposes of publication.] The Court adopts them and finds the facts to be as follows:

"1. Plaintiff, General Electric Credit Corporation ('GECC'), offers prospective customers several formats for the purpose of structuring financing arrangements, including security agreements, leases without options to purchase, and leases with options to purchase at the end of the terms of such leases for a nominal consideration. Defendant, Tenna Corporation ("Tenna'), selected the format of a lease with an option to purchase for a nominal consideration.

2. Attached hereto and identified as 'Stipulation Exhibits' are the following:

S–1 'Chattel Lease Agreement' dated September 25, 1979.

S–2 Promissory Note relating to Exhibit 'S–1'.

S–3 Letter dated September 21, 1979 regarding 'S–1' purchase obligation of Defendant.

S–4 Financing Statements filed with the Secretary of State and County Recorder relative to Exhibit 'S–1'.

S–5 'Chattel Lease Agreement' dated October 24, 1979.

S–6 Promissory Note relating to Exhibit 'S–5'.

S–7 Purchase Agreement between the parties relative to Exhibit 'S–5' evidencing the obligation of Defendant to purchase the equipment described in Exhibit 'S–5' at the end of the purported lease term.

S–8 Financing Statements filed with the Secretary of State and County Recorder relative to Exhibit 'S–5'.

S–9 Letter of March 25, 1980 from Plaintiff to Defendant which relates to Exhibit 'S–5'.

S–10 The Amended Proof of Claim filed by Plaintiff purporting to be a creditor of the Debtor in the case under Title 11 of the U. S. Code.

3. The items of equipment described in Exhibits 'S–1' and 'S–5' were manufactured and delivered to Defendant, Tenna, pursuant to orders entered by it with the manufacturers previous to such delivery, and as follows:

a. Harper Buffing Machine—manufactured and shipped by Harper Buffing Machine Company.

b. Stud Driving Machine—manufactured and shipped by Dial X Automated Equipment Company.

c. Reader-Printer—manufactured and shipped by Oce Industries, Inc.

4. GECC upon delivery of the above-described equipment to Tenna, paid to the manufacturers of such equipment the full purchase price of the equipment. GECC paid the purchase price for the equipment described in Exhibit 'S–5' on October 26, 1979, and for the equipment described in Exhibit 'S–1' on September 25, 1979.

5. Concurrent with the payment of GECC described in Stipulation No. 4 Tenna paid to GECC the following sums:

a. $908.01 plus $44.94 purportedly for Ohio Sales or Use tax for a total sum of $957.95 as relates to Exhibit 'S–1'.

b. $13,693.80 as relates to Exhibit 'S–5'.

6. Thereafter on November 1, 1979 Tenna paid Plaintiff $302.67 plus $16.65 purportedly for Ohio Sales or Use tax for a total of $319.22 as relates to Exhibit 'S–1'.

7. Subsequent thereto Tenna has not paid any additional sums to Plaintiff relative to Exhibit 'S–1'.

8. If Tenna had continued to pay monthly installments to Plaintiff as relates to Exhibit 'S–1' it would have been required to include Ohio Sales or Use taxes computed at the rate of five and one-half (5½%) percent on each such installment which would have been thirty-two installments of $302.67 and a thirty-third installment of $303.67 or including the purported Ohio Sales or Use tax, payment of $319.32 per month for thirty-two months, and a final installment of $320.37.

9. Describing the transaction contemplated in the document identified as Exhibit

'S–1' as a 'lease' would require Ohio Sales or Use taxes in the sum of $599.45 to be paid.

10. If the transaction contemplated in Exhibit 'S–1' were classified as a sale the aggregate Ohio Sales or Use taxes assessable against Defendant, Tenna, would have been $497.20.

11. Tenna has made no payments to Plaintiff as relates to Exhibit 'S–5' after the payment of the sum of $13,693.80.

12. If Tenna had continued to make payments relative to Exhibit 'S–5' it would have paid eighty-two consecutive monthly installments of $2,375.35, and a final installment of $2,376.76, all of which are exclusive of Ohio Sales or Use Taxes, as Tenna had claimed to be exempt from such taxes as the equipment was to be used for manufacturing.

13. The aggregate Ohio Use Tax assessable against Tenna, if it had made installment payments to Plaintiff as relates to Exhibit 'S–5' as a purported lease of chattels and was not exempted from such taxes, would have been in the aggregate sum of $11,597.18.

14. If the transaction contemplated by Exhibit 'S–5' had been denoted as a sale the aggregate Ohio Sales or Use taxes that would have been payable by Defendant, Tenna, would have been the sum of $7,531.59, provided Tenna was not exempted from such taxes as above mentioned.

15. Without Plaintiff admitting that the Retail Installment Law of Ohio as found in Chapter 1317 of the Ohio Revised Code or the finance and service charge limitations set forth therein, are applicable, the following represents the disclosure material necessary and the computations of permissible charges thereunder particularly Section 1317.06 thereof based upon a 33 month amortization schedule, as relates to Exhibit 'S–1'.

| | |
|---|---|
| Cash Price | $ 9,040.00 |
| Down Payment | 908.01 |
| Unpaid Balance | $ 8,131.99 |
| Official Fees | 6.00 |
| | $ 8,137.99 |

| | |
|---|---|
| *Finance Charge | 1,790.34 |
| **Service Charge | 57.75 |
| Time Balance | $ 9,986.08 |
| Total Time Price | $10,888.09 |

*Finance Charge Computations

| | | |
|---|---|---|
| 8% ÷ 12 months | = | .0066666 per month |
| x 33 months | = | .2199978 |
| x $8,137.99 | = | $1,790.34 |

**Service Charge Computations

| | |
|---|---|
| $.50 for 1st $50.00 unit per month | |
| .25 for next $50.00 unit per month | |
| .25 for next $50.00 unit per month | |
| .25 for next $50.00 unit per month | |
| .25 for next $50.00 unit per month | |
| .25 for next $50.00 unit per month | |
| $1.75 | |
| x 33 months | |
| $57.75 | |

16. Item 8 of Exhibit 'S–1' is in the sum of $9,989.11, which would exceed the finance and service charges described in the preceding Stipulation by $3.03, exclusive of the additional Ohio Use tax burden hereinbefore described and stipulated to.

17. Without Plaintiff admitting that the Retail Installment Law of Ohio as found in Chapter 1317 of the Ohio Revised Code or the finance and service charge limitations set forth therein are applicable, the following represents the disclosure material necessary and the computations of permissible charges thereunder particularly Section 1317.06 thereof based upon an 83 month amortization schedule, as relates to Exhibit 'S–5'.

| | |
|---|---|
| Cash Price | $136,938.00 |
| Down Payment | 13,693.80 |
| Unpaid Balance | $123,244.20 |
| Official Fees | 6.00 |
| | $123,250.20 |
| *Finance Charge | 68,197.76 |
| **Service Charge | 145.25 |
| Time Balance | $191,593.21 |
| Total Time Price | $205,281.01 |

*Finance Charge Computations

| | | |
|---|---|---|
| 8% ÷ 12 months | = | .0066666 per month |
| x 83 months | = | .5533278 |
| x $123,250.20 | = | $68,197.76 |

**\*\*Service Charge Computations**

$.50 for 1st $50.00 unit per month
.25 for next $50.00 unit per month
.25 for next $50.00 unit per month
.25 for next $50.00 unit per month
.25 for next $50.00 unit per month
.25 for next $50.00 unit per month
$1.75
x 83 months
$145.25

18. Item 8 of Exhibit 'S–5' is in the sum of $197,155.46, which would exceed the finance and service charges described in the preceding Stipulation by $5,562.25, exclusive of the potential additional Ohio Use Tax burden hereinbefore described and stipulated to.

19. The computations made by Plaintiff with respect to Exhibit 'S–9' included calculations of interest charges without making an adjustment upon the principal sum relating to the $13,693.80 payment.

20. Predicated upon Exhibit 'S–9' and without Plaintiff admitting that the transaction contemplated in Exhibit 'S–5' is a Retail Installment Sale, the components thereof as purportedly adjusted by the referenced Exhibit would be as follows:

| | |
|---|---|
| Cash Price | $136,938.00 |
| Down Payment | 13,693.80 |
| Unpaid Balance | $123,244.20 |
| Official Fees | 6.00 |
| | $123,250.20 |
| Finance Charge | 69,015.75 |
| Service Charge | 147.00 |
| Time Balance | $192,412.95 |
| Total Time Price | $206,100.75 |

21. The amount reflected in the preceding Stipulation as relates to the 'Time Balance' is $819.74 greater than the sum reflected as 'Time Balance' in paragraph 17 *supra*. The interest rate reflected in Stipulation 20 is 8.096% add-on, and if the alleged lease had required payments to extend for 84 months as opposed to 83 months the interest rate would have been 8% add-on.

22. The parties are unable to agree or stipulate as to whether Exhibit 'S–9' is a timely rectification of a purported overcharge, or if the overcharge is wilfull, and therefore incapable of rectification under Ohio Revised Code Section 1317.08.

23. The parties are unable to agree or stipulate whether the additional Ohio Sales and Use Taxes applicable to the transactions described as a lease, as opposed to a sale, constitute a 'wilfull overcharge' as that term is described in Ohio Revised Code Section 1317.08.

24. The parties are further unable to stipulate or agree whether Exhibit 'S–10' constitutes an attempt by Plaintiff to exact a 'wilfull overcharge' as that term is defined in Ohio Revised Code Section 1317.-08.

25. The principal balance as asserted in the Proof of Claim (Exhibit 'S–10') represents, as relates to the equipment and transaction described in Exhibit 'S–5', the net cash price of the equipment adjusted by a deduction of $13,693.80 constituting the sums paid by Defendant to Plaintiff relative thereto as hereinabove described.

26. The principal balance as asserted in the Proof of Claim (Exhibit 'S–10') represents as relates to the transaction described in Exhibit 'S–1', the cash price of the equipment, adjusted by a deduction of $908.01 plus that portion of the November 1, 1969 (sic) payment to Plaintiff by Defendant in the sum of $319.32, which Plaintiff alleges was attributable to 'principal amortization' only.

27. To the extent Financing Statements were required to be filed in the Offices of the Secretary of State of Ohio and the County Recorder of Cuyahoga County, Ohio, to perfect security interests in the chattel equipment described in Exhibits 'S–1' and 'S–5' such Financing Statements were timely and properly filed on the dates indicated in Exhibits 'S–4' and 'S–8'.

28. GECC herewith and hereby currently waives any right to receive payment of any interest on any obligations evidenced by Exhibits 'S–1' and 'S–5' exceeding eight (8%) percent simple interest per annum after maturity.

29. That the transactions and documents hereinbefore stipulated to constitute extensions of credit by Plaintiff to Defendant.

30. That all of the transactions between the parties hereinbefore described and stipulated to are governed by the laws of the State of Ohio.

31. The parties do hereby agree that the foregoing is a complete and comprehensive statement of facts, and that there are no other facts which either party wishes to introduce into evidence respecting the applicability and effect of the Ohio Retail Installment Sales Act, and by reason thereof, the parties do hereby waive the right to trial by jury and the right to introduce additional facts unless requested by the Court to do so. The parties further recognizing the rights of the Court to request oral argument from Counsel for the parties."

## ISSUES

1. Are the GECC–TENNA transactions "loans" or "sales"?

2. If "sales", are the transactions retail installment sales governed by ORISA?

3. If ORISA controls, did GECC violate the statute thereby subjecting itself to the attendant penalties?

## LAW AND COMMENTS

Obviously, if the transactions in question are determined to be loans rather than sales, Issues No. 2 and No. 3 are moot. Consequently, our attention is focused upon Issue No. 1.

Since the stipulations are rather extensive, a brief summary of the salient facts may be helpful. TENNA selected and ordered several items of equipment from various manufacturers. The agreement of September 25, 1979 dealt with the Reader-Printer and the October 24, 1979 transaction covered the Conveyer Buffing Machine and a Stud Driving Machine. Upon manufacturers' delivering equipment to TENNA, GECC paid the manufacturers in full. Concurrent with payment, GECC and TENNA entered into two agreements designated "Chattel Leases" which contained options to purchase for $1.00 upon expiration. TENNA selected this lease format from three available choices, the other two being a lease with security agreements and another containing no purchase option. TENNA paid GECC a total of $1,210.68 on the Reader-Printer, $908.01 down payment and a subsequent $302.67 payment on November 1, 1979. A $13,693.80 down payment was made on the Buffing and Stud Driving Machines. No additional payments were made. TENNA filed the Chapter 11 petition on December 5, 1979 and scheduled the GECC debt on A–2 for a total of $206,-842.30.

There is a paucity of law in Ohio defining the scope of ORISA. None of the cases in Ohio or elsewhere is identical with the case in point. Determination of the issues, therefore, lies with examining the statutory language and applying the law in cases with similar facts.

■ It is clear that ORISA (Ohio Revised Code, Section 1317.01, etc.) applies only to transactions involving retail installment sales. Case law also indicates that one purpose of the Act was to separate the interests of the retail seller and the financing institution in profits resulting from a retail sale. *Teegardin v. Foley*, 166 OS 449 (1957) and *In the Matter of City Home Service, Inc.*, Bankruptcy No. 77123, (N.D.Ohio, 1958), unreported. From the statutory language and these cases it is apparent the financing agent is not covered by or subject to the provisions of ORISA. Further, ORISA restricts only the relationship between the retail seller and buyer and does not affect a buyer's independent dealings with a financier. To determine, therefore, whether GECC was acting as a financing agent or a seller, the proper method for analyzing the transactions is to look through the form and examine the intent of the parties and the facts and circumstances which existed at the time of the agreements.

It is imperative to reiterate that the evidence reflects no dealings between GECC and the manufacturers other than the former's payment in full for the equipment selected and ordered by TENNA.

The parties agree and the statute corroborates that the transactions constitute security interests. *O.R.C., Section 1301.01 (KK)* states,

"Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security*." (emphasis added)

■ GECC'S security interest in the equipment, however, is not sufficient to apply ORISA without the existence of a retail sale. We must determine, therefore, whether GECC sold the equipment to TENNA or loaned them the purchase price and took the security interests to insure repayment.

■ A retail installment sale is defined under ORISA as including "... every *retail installment contract* to sell specific goods, every *consumer transaction* in which the cash price may be paid in installments over a period of time, and every *retail sale* of specific goods to any person in which the cash price may be paid in installments over a period of time." *O.R.C., Section 1317.-01(A).* (emphasis added) "Contract for sale" and "sale" for the purposes of ORISA carry the same meaning as those terms are given in the general definitions of the Ohio Commercial Code. *O.R.C., Section 1317.-01(M).* "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price." *O.R.C., Section 1302.-01(A)(11). Section 1302.02, O.R.C.,*[1] makes it clear, however, that even though a transaction takes the form of a contract for sale, if it is intended only to operate as a security transaction it will not be treated as a sales agreement.

■ The GECC–TENNA transactions are indeed difficult to characterize as sales or loans. Careful scrutiny and deliberation, however, lead to the inescapable conclusion that the agreements are purchase money loans with retained security. In economic reality TENNA selected the merchandise, placed the orders and received delivery of the equipment from the manufacturers; i. e., TENNA purchased the equipment from the manufacturers. GECC then provided the funds to complete the purchases and took a security interest in the equipment to insure repayment of the loan. Despite any appearance of a sale, it is apparent there was never any intent that GECC sell TENNA the equipment. GECC was acting as a financing agent for TENNA's purchases from the manufacturers, and Section 1302.-02, O.R.C. precludes the transactions from being construed as sales.

Similar transactions to those in question have been considered by other Courts. The basic guideline for characterizing the transactions is well stated in *Burroughs Corp. v. Barry*, 380 F.2d 427, 429 (8th Cir. 1967),

"At the outset we would point out that in determining the character of an instrument, the use of the term "lease" has undoubted weight, but the governing consideration is the legal effect of the instrument as gathered from all its provisions."

Courts have found transactions substantially comparable to the within to be loans rather than leases or sales contracts. In *McKeeman v. Commercial Credit Equipment Corp.*, 320 F.Supp. 938 (D.Neb., 1970), the Court held a lease was actually an

---

1. "§ 1302.02 (UCC 2–102) Scope; certain security and other transactions excluded.

Unless the context otherwise requires, sections 1302.01 to 1302.98, inclusive, of the Revised Code, apply to transactions in goods; they do not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor do sections 1302.01 to 1302.98, inclusive, of the Revised Code impair or repeal any statute regulating sale to consumers, farmers, or other specified classes of buyers."

agreement for a loan of money. Although the lessor held legal title to the equipment, the burdens of ownership were placed on the lessee with no recording of the lessor's ownership interest. In determining a lease agreement to be a loan, Courts have also considered and were persuaded by the fact the lessor was not in the business of selling the goods involved, did not maintain an inventory or sales staff, did not advertise the goods and had no interest therein other than financing the purchase. In re *Sherwood Diversified Services, Inc.*, 15 UCC Rep.Serv., 701 (S.D.N.Y., 1974) and *McGalliard v. Liberty Leasing Co. of Alaska, Inc.*, Alaska, 534 P.2d 528, (1975).

In the case at bar, the burdens of ownership fall upon TENNA despite GECC's purportedly retaining title to the equipment. TENNA bears responsibility to provide insurance, pay any and all taxes and is obligated for any damage to or loss of the equipment. GECC is to receive the full amount of the agreement; i. e., repayment of advanced funds. The burdens of ownership upon TENNA weigh heavily in determining it purchased the equipment from the manufacturers, and GECC's only interest in the equipment was security on the loan of the purchase price. Also significant and most persuasive is that GECC is a financing agent, not a seller of equipment, maintains no inventory, advertises no equipment sales and has no sales staff.

The GECC–TENNA transactions were purchase money loans for commercial equipment, not sales. The sales occurred between TENNA and the manufacturers. GECC, whose purpose is structuring financing arrangements, had no voice in the selection or delivery of the equipment. In fact, GECC had no contact with the manufacturers other than advancing the purchase price for TENNA. Since ORISA regulates retail installment sales and not purchase money loans in commercial transactions, and there being no evidence GECC as financing agent was involved in the sales between TENNA and the manufacturers, the GECC–TENNA agreements do not fall within the purview of ORISA.

Assuming, arguendo, the transactions were sales, in this Court's opinion, ORISA is still inapplicable. Courts and commentators alike have noted the primary purpose behind retail installment sales regulation is "... to protect the unwary, inexperienced retail buyer, easily misled and overreached." In the Matter of City Home Service, Inc., supra; see also *Consumer Credit: The Ohio Retail Installment Sales Act and Its Abuses*, 30 CWR Law Rev. 621, (1969). The latter article contains the following language on *page 621*, "In general, installment sales acts were passed to relieve economic burdens on low-income, high-risk consumers." Further, on *page 629*, "Such sales are generally the result of heavy television advertising campaigns which offer expensive luxury items at seemingly low prices and at favorable terms of time payment." On *page 453* of *Teegardin v. Foley*, supra, in referring to ORISA, the Court states, "... Chapter 1317 was enacted by the General Assembly in order to correct certain abuses existing in the field of dealer participation in the financing of sales made on the installment plan, which were so common, and that the abuses directly responsible for the legislation centered in the area of sales of automobiles, both new and used."

TENNA relies heavily upon the case of *In re Sloan*, 285 F.Supp. 1, (N.D.Ohio, 1968). This Court appreciates the *Sloan* argument when applied to retail consumer sales such as motor vehicles, motor homes, washers, dryers, television sets, etc., but not to commercial transactions where the equipment is used for manufacturing purposes. The application of the *Sloan* case is best described on *page 625* of *CWR Law Review article*, supra, "The *Sloan* decision should also be a major weapon of Legal Aid offices and the neighborhood law offices in the ghetto areas, where the negative equity situation is most likely to occur."

To torture the GECC–TENNA agreements into retail installment sales will serve neither the purposes of ORISA nor the real-

ities of the purchase money loans in the commercial transactions herein.

## CONCLUSIONS OF LAW

1. The GECC–TENNA transactions are loans to TENNA for TENNA's purchase of commercial equipment from the manufacturer.

2. The GECC–TENNA transactions being loans and not retail installment sales, ORISA has no application and Issues No. 2 and No. 3 are, therefore, moot.

EXHIBIT "S–1"

**LEASE AGREEMENT**     781325

GENERAL ELECTRIC CREDIT CORPORATION

NAME Tenn Corporation

BILLING ADDRESS   19201 Cranwood Parkway, Cleveland, Cuyahoga, Ohio   44128

| NUMBER | STREET | CITY | COUNTY | STATE | ZIP CODE |

The undersigned lessor (herein called "Lessor") does hereby lease to the undersigned lessee (herein called "Lessee"), subject to the terms and conditions set forth, both sides hereof, the equipment described below and/or in the Schedule "A" attached hereto and incorporated herein (hereinafter called the "Equipment"):

(Describe Equipment fully, including model number, make, kind of unit, serial number.)

One (1) New 1979 Oce Model 3600 Reader Printer, S/N 14302; plus all attachments and accessories now thereon or hereafter acquired thereto.

(AS MAY BE REQUIRED BY APPLICABLE LAW)

| | | |
|---|---|---|
| 1. Equivalent Cash Price ["Cash Price", if this were a sale] | $ 9,040 | 00 |
| 2. Less: Equivalent Down Payment ["Down Payment", if this were a sale]   Cash $ 908 01 | | |
| Trade-in $: | $ 908 | 01 |
| 3. Equivalent Unpaid Cash Balance (1 minus 2) ["Unpaid Cash Balance", if this were a sale] | $ 8,131 | 99 |
| Purchase Option 1 (NONE) | | 00 |
| 4. Insurance Charge | $ | |
| 5. Official Fees | $ 63 | 00 |
| 6. Principal Rental Balance (3+4+5) ["Principal Balance", if this were a sale] | $ 8,195 | 99 |
| 7. Plus: Leasing Charge ["Finance Charge" or "Time Price Differential", if this were a sale] | $ 1,793 | 12 |
| 8. Time Rental Balance (6+7) ["Time Balance", if this were a sale] | $ 9,989 | 11 |
| 9. Total Time Rental Price (2+8) ["Time Sale Price", if this were a sale] | $ 10,897 | 12 |

DESCRIPTION OF TRADE IN

None

for the term of 36 months commencing on execution of lease at a total rental of $ 10,897.12 of which 3 @ $302.67 is payable on or before delivery of the Equipment and the remaining rental in 33 consecutive installments: the first installment due 11-5 19 ; and subsequent installments due on the same date monthly (monthly, unless otherwise specified) thereafter. Each installment shall be in the amount of $ 302.67 + Tax except the final installment which shall be $ 303.67 + Tax

## TERMS AND CONDITIONS

A. Lessor agrees to furnish the Equipment as hereinabove described and Lessee agrees to lease the Equipment for the term set forth at the rental herein provided.

B. Lessee agrees to keep the Equipment at 19201 Cranwood Parkway, Cleveland, Ohio and not to remove all or any part of the Equipment therefrom without the Lessor's prior written consent. The Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to the real property, and the Equipment shall not by reason of any annexation to personal property become a part thereof. Title to Equipment shall at all times remain in Lessor.

C. From the time the Equipment is delivered to the Lessee until it is returned to Lessor, Lessee shall use and preserve the Equipment in a careful and proper manner and shall be responsible for any loss or damage thereto from any cause whatsoever and will at Lessee's own expense maintain fire and extended coverage insurance on the Equipment for its full insurable value, with loss payable to Lessee and Lessor as their respective interests may appear. If Lessor so requires, Lessee shall furnish policies or certificates of insurance evidencing such coverage. Each policy shall provide for ten (10) days written notice to Lessor of the cancellation or material modification thereof.

D. Lessee agrees to report and pay to the appropriate taxing authority any and all taxes (including penalty and interest, if any) assessed against said Equipment or its ownership, rental or use thereof, and to reimburse Lessor or its assigns upon receipt of written request for reimbursement, for any taxes assessed against Lessor or its assigns by reason of the ownership, rental or use of said Equipment, or by reason of Lessor's sale thereof to any third party, if such sale eliminates the necessity of paying tax on the ownership, rental or use of said Equipment.

See Purchase Option Letter attached hereto and made a part hereof by reference. GOK Initials

ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS AGREEMENT ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.

Lessor GENERAL ELECTRIC CREDIT CORPORATION (L. S)

By _____ (Signature)

_____ (Title)

20545 Center Ridge Road Cleveland, Ohio 44116

Lessor's Address

Dated Executed by Lessor 9-25 19 78

LESSOR'S COPY

PLEASE USE INK   ORIGINAL SIGNATURES REQUIRED ON ALL COPIES

TENNA CORPORATION (L. S)
(Signature of Lessee if individual, typed name of Lessee if other than individual)

By _____ (L. S)
(Signature & title of Lessee if not individual.)

By _____ (L. S)
(Signature & title of Lessee if not individual.)

(Witness) _____ (L. S)

Date Executed by Lessee _____ 51

SEE REVERSE SIDE

912

## EXHIBIT "S-2"

781325

PROMISSORY NOTE

No....................

19201 Cranwood Parkway, Cleveland, Ohio 44128.............Date. 8-31-79
(Street Address of Maker)              (Town)        (State)

FOR VALUE RECEIVED, the undersigned promises to pay to the order of

GENERAL ELECTRIC CREDIT CORPORATION
...........................................................
Name of Payee (Dealer, Distributor, etc.)

Ten Thousand Eight Hundred Ninety Seven and 12/100.........Dollars ($ 10,897.12  )
(Total Balance To Be Paid)

payable at office of General Electric Credit Corporation  20545 Center Ridge
Road, Cleveland, Ohio 44116......... XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX the first installment
payable November 5, 1977.. balance of installments payable on even
date of each succeeding month thereafter until this note is fully paid, with late
charges of five cents (5¢) per dollar, but not exceeding the lawful maximum, on
each installment not paid within ten days after due date.

If any installment on this note is not paid when due, the entire amount
unpaid hereon shall become due and payable forthwith at the election of the
holder of this note.
   The undersigned hereby irrevocably authorizes any attorney-at-law to appear
for the undersigned, in any court in the United States, in term time or vacation,
and waive issue and service of process and confess judgment against the under-
signed in favor of the holder hereof for such amount as may appear to be unpaid
hereon after maturity, together with, if permitted by law, costs of collection
and an attorney's fee of 20% of the amount then due but not less than $35, and to
release all errors and waive all right of appeal.
   All benefits of valuation, appraisement and exemption laws are hereby waived.
   Presentment, demand, protest and notice of protest and nonpayment are hereby
waived.
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXX **

TENNA CORPORATION
.........................................    ..........................................
(Typed name of maker if corporation)        (Signature of maker if individual or
                                             partnership (or trade style)
By.X............................:L.S.
                    . Title                  .....................................L.S.
By..............................L.S.
                    Title                    .....................................L.S.

   WARNING--BY SIGNING THIS PAPER, YOU GIVE UP YOUR RIGHT TO NOTICE
   AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY
   BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS
   OF A COURT CAN BE USED TO COLLECT FROM YOU OR YOUR EMPLOYER RE-
   GARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER
   FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY
   WITH THE AGREEMENT, OR ANY OTHER CAUSE.

TENNA CORPORATION
By........................................L.S.    By.................................L.S.
                         Title
By.X...................................L.S.       By.................................L.S.
                         Title

DL-53 Revised
                    (SEE OVER)

## EXHIBIT "S-3"

781925

CLEVELAND DISTRICT OFFICE                    September 21, 1979

Tenna Corporation
19201 Cranwood Parkway
Cleveland, Ohio 44128

                                   RE:  Lease Dated _____

Gentlemen:

Upon expiration of the original term of said Lease, the Lessee
agrees to purchase the equipment at a cost of $1.00 assuming
there exists no default in conditions or terms of the Lease at
expiration.

                              Very truly yours,

                              GENERAL ELECTRIC CREDIT CORPORATION

                              Eddie Tolbert, Jr.
                              District Credit Manager

ET:bam

ACCEPTED TO:

TENNA CORPORATION

By X_____

Title_____

Date_____

...ted on 100% Recycled Paper.

## EXHIBIT "S-4"

---

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| 1 Debtor(s) (Last Name First) and address(es) | 2 Secured Party(ies) and address(es) | 3 Maturity date (if any) |
|---|---|---|
| Tenna Corporation 19201 Cranwood Parkway Cleveland, Ohio 44128 | General Electric Credit Corporation 20545 Center Ridge Road Cleveland, Ohio 44116 | 9/28/79 |

4 This financing statement covers the following types (or items) of property:

Collateral: EQUIPMENT
One (1) New 1979 Oce Model 3600 Reader Printer, S/N 14302; plus all attachments and accessories now thereon or hereafter acquired thereto.

Equipment located at Debtor's place of business as shown in Block #1 above.

Check [X] if covered: [ ] Proceeds of Collateral are also covered [ ] Products of Collateral are also covered    No. of additional sheets presented.
Filed with: Ohio Secretary of State

This instrument prepared by

TENNA CORPORATION                                    GENERAL ELECTRIC CREDIT CORPORATION

By:_____ Signature(s) of Debtor(s) ____ Title    By ____ Signature(s) of Secured Party(ies) ___ Title

DEBTOR COPY    STANDARD FORM – UNIFORM COMMERCIAL CODE – FORM UCC-1
Approved by The Secretary of State

---

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| 1 Debtor — Last Name First and address(es) | 2 Secured Party(ies) and address(es) | 3 Maturity date (if any) |
|---|---|---|
| Tenna Corporation 19201 Cranwood Parkway Cleveland, Ohio 44128 | General Electric Credit Corporation 20545 Center Ridge Road Cleveland, Ohio 44116 | 9/26/79 |

4 This financing statement covers the following types (or items) of property:

Collateral: EQUIPMENT
One (1) New 1979 Oce Model 3600 Reader Printer, S/N 14302; plus all attachments and accessories now thereon or hereafter acquired thereto.

Equipment located at Debtor's place of business as shown in Block #1 above.

Check [X] if covered: [X] Proceeds of Collateral are also covered [ ] Products of Collateral are also covered    No. of additional sheets presented:
Filed with: Cuyahoga County Recorder

This instrument prepared by

TENNA CORPORATION                                    GENERAL ELECTRIC CREDIT CORPORATION

By:___ Signature(s) of Debtor(s) ___ Title    By ___ Signature(s) of Secured Party(ies) ___ Title

FILING OFFICE COPY - NUMERICAL    STANDARD FORM - UNIFORM COMMERCIAL CODE - FORM UCC-1
Approved by The Secretary of State

## EXHIBIT "S-5"

### LEASE AGREEMENT

**GENERAL ELECTRIC CREDIT CORPORATION**

NAME: T___a Corporation

BILLING ADDRESS: 19201 Cranwood Parkway, Cleveland, Cuyahoga, Ohio, 44128

| NUMBER | STREET | CITY | COUNTY | STATE | ZIP CODE |

The undersigned lessor (herein called "Lessor") does hereby lease to the undersigned lessee (herein called "Lessee"), subject to the terms and conditions set forth on both sides hereof, the equipment described below and/or in the Schedule "A" attached hereto and incorporated herein (hereinafter called the "Equipment"):

(Describe Equipment fully, including model number, make, kind of unit, serial number ).

One (1) New 1979 Harper 52' Model V5 Conveyor Type Buffing Machine, S/N 79447 and One (1) New 1979 Stud Driving Machine, S/N 7920, plus all attachments and accessories now thereon or hereafter acquired thereto.

(AS MAY BE REQUIRED BY APPLICABLE LAW)

| | |
|---|---|
| 1. Equivalent Cash Price ["Cash Price", if this were a sale] | $136,938.00 |
| 2. Less: Equivalent Down Payment ["Down Payment", if this were a sale] Cash $ 13,693.80 | |
| Trade-in $: | $13,693.80 |
| 3. Equivalent Unpaid Cash Balance (1 minus 2) ["Unpaid Cash Balance", if this were a sale] Purch. Option 1.00 | $123,244.20 |
| 4. Insurance Charge | $ (NONE) |
| 5. Official Fees | $147.00 |
| 6. Principal Rental Balance (3+4+5) ["Principal Balance", if this were a sale] | $123,392.20 |
| 7. Plus: Leasing Charge ["Finance Charge" or "Time Price Differential", if this were a sale] | $73,763.26 |
| 8. Time Rental Balance (6+7) ["Time Balance", if this were a sale] | $197,155.46 |
| 9. Total Time Rental Price (2+8) ["Time Sale Price", if this were a sale] | $210,849.26 |

ISCRIPTION OF TRADE IN: None

For the term of **84** months commencing **on execution of lease** at a total rental of $**210,849.26** of which $**1 @ $13,693.80 + Tax** is payable on or before delivery of the Equipment and the remaining rental in **83** consecutive installments; the first installment due _____, 19___, and subsequent installments due on the same date **monthly** (monthly, unless otherwise specified) thereafter. Each installment shall be in the amount $**2,375.35 + Tax** except the final installment which shall be $**2,376.76 + Tax**.

### TERMS AND CONDITIONS

A. Lessor agrees to furnish the Equipment as hereinabove described and Lessee agrees to lease the Equipment for the term set forth at the rental herein provided.

B. Lessee agrees to keep the Equipment at **19201 Cranwood Parkway, Cleveland, Ohio** and not to remove it or any part of the Equipment therefrom without the Lessor's prior written consent. The Equipment shall at all times remain personal property of Lessor regardless of its annexation to the real property, and the Equipment shall not by reason of any annexation to personal property become a part thereof. Title to Equipment shall at all times remain in Lessor.

C. From the time the Equipment is delivered to the Lessee until it is returned to Lessor, Lessee shall use and preserve the Equipment in a careful and proper manner and shall be responsible for any loss or damage thereto from any cause whatsoever and will at Lessee's own expense maintain fire and extended coverage insurance on the Equipment for its full insurable value, with loss payable to Lessee and Lessor as their respective interests may appear. If Lessor so requires, Lessee shall furnish policies or certificates of insurance evidencing such coverage. Each policy shall provide for ten (10) days written notice to Lessor of the cancellation or material modification thereof.

D. Lessee agrees to report and pay to the appropriate taxing authority any and all taxes (including penalty and interest, if any) assessed against said Equipment or the ownership, rental or use thereof, and to reimburse Lessor or its assigns upon receipt of written request for reimbursement, for any taxes assessed against Lessor or its assigns by reason of the ownership, rental or use of said Equipment, or by reason of Lessor's sale thereof to any third party, if such sale eliminates the necessity of paying tax on the ownership, rental or use of said Equipment.

See Purchase Agreement attached hereto and made a part hereof by reference. XGDK Initials

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS AGREEMENT ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

Lessor: GENERAL ELECTRIC CREDIT CORPORATION (L. S.)

By _____ (Signature)

_____ (Title)

Lessor's Address: 20545 Center Ridge Road, Cleveland, Ohio 44116

Date Executed by Lessor **10-24** 19**71**

LESSOR'S COPY

PLEASE USE INK. ORIGINAL SIGNATURES REQUIRED ON ALL COPIES

TERNA CORPORATION (L. S.)
(Signature of Lessee if individual, typed name of Lessee if other than individual)

By X_____ (L. S.)

By _____ (L. S.)

(Witness) X D. R. Hollingsworth

Date Executed by Lessee **10-18** 19

### SEE REVERSE SIDE

## EXHIBIT "S-6"

PROMISSORY NOTE

No.....................

19201 Cranwood Parkway, Cleveland, Ohio  44128 ...... Date............
(Street Address of Maker)        (Town)      (State)

FOR VALUE RECEIVED, the undersigned promises to pay to the order of

GENERAL ELECTRIC CREDIT CORPORATION
Name of Payee (Dealer, Distributor, etc.)
Two Hundred Ten Thousand Eight Hundred Forty Nine and 26/100
......................................................Dollars ($ 210,849.26  )
(Total Balance To Be Paid)

Payable at office of General Electric Credit Corporation  20545 Center Ridge
Road, Cleveland, Ohio  44116  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXX Dollars ($XXXXXXXXXX) the first installment
payable............. balance of installments payable on even
date of each succeeding month thereafter until this note is fully paid, with late
charges of five cents (5¢) per dollar, but not exceeding the lawful maximum, on
each installment not paid within ten days after due date.

If any installment on this note is not paid when due, the entire amount
unpaid hereon shall become due and payable forthwith at the election of the
holder of this note.

The undersigned hereby irrevocably authorizes any attorney-at-law to appear
for the undersigned, in any court in the United States, in term time or vacation,
and waive issue and service of process and confess judgment against the under-
signed in favor of the holder hereof for such amount as may appear to be unpaid
hereon after maturity, together with, if permitted by law, costs of collection
and an attorney's fee of 20% of the amount then due but not less than $35, and to
release all errors and waive all right of appeal.

All benefits of valuation, appraisement and exemption laws are hereby waived.

Presentment, demand, protest and notice of protest and nonpayment are hereby
waived.
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXX **

TERRA CORPORATION
...............................
(Typed name of maker if corporation)          (Signature of maker if individual or
                                              partnership (or trade style)
By X............................ Treas. L.S.
                            Title              ....................................L.S.
By............................... L.S.
                            Title             ....................................L.S.

WARNING--BY SIGNING THIS PAPER, YOU GIVE UP YOUR RIGHT TO NOTICE
AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY
BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS
OF A COURT CAN BE USED TO COLLECT FROM YOU OR YOUR EMPLOYER RE-
GARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER
FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY
WITH THE AGREEMENT, OR ANY OTHER CAUSE.

TERRA CORPORATION
By......................... L.S.  , By........................... L.S.
                      Title
By X....................... L.S.  By............................ L.S.
                      Title

DL-53 Revised

(SEE OVER)

# EXHIBIT "S-7"

PURCHASE AGREEMENT

WHEREAS, General Electric Credit Corporation, hereinafter called "GECC" may have for sale the following described property:

> One (1) New 1979 Harper 52' Model V5 Conveyor Type
> Buffing Machine, S/N 79447 and One (1) New 1979 Stud
> Driving Machine, S/N 7920; plus all attachments and
> accessories now thereon or hereafter acquired thereto

hereinafter called "the Equipment", and

WHEREAS,   TENNA CORPORATION                    , hereinafter
called "Buyer", desires to acquire by purchase, title to the Equipment, and

WHEREAS, the parties hereto desire to reduce to writing the conditions under which Buyer will purchase the Equipment and to fix the time and price for such purchase;

NOW, THEREFORE, the parties hereto, in consideration of the premises and covenants hereinafter contained, agree as follows:

1.  Buyer hereby irrevocably agrees to purchase the Equipment upon demand by GECC.  Buyer shall purchase the Equipment, on or before _October 5, 1986_   at a price of _$1.00_ .

2.  A demand for purchase of the Equipment may be made by GECC at any time after the date hereof and the effective date for purchase of the Equipment shall be the first (1st) day of the month after such demand or such other date as may be mutually agreed between GECC and Buyer.  The Equipment shall be sold to Buyer and possession made available to Buyer "as-is" and "where-is"; GECC will not make any representation or warranty, express or implied, including, but not limited to any warranty as to fitness for any particular or other purpose, merchantability, or patent infringement, except that GECC shall have the right to sell the Equipment and shall transfer to Buyer good title free and clear of any superior lien or encumbrance not claimed or owned by Buyer.  Buyer is liable for any taxes payable as a result of this sale.

SEE REVERSE SIDE

918

## EXHIBIT "S-8"

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code

| 1 Debtor(s) (Last Name First and address) | 2 Secured Party(ies) and address(es) | 3 Maturity date(if any) |
|---|---|---|
| Tenna Corporation<br>19201 Cranwood Parkway<br>Cleveland, Ohio 44128 | General Electric Credit<br>Corporation<br>20545 Center Ridge Road<br>Cleveland, Ohio 44116 | 10/29/74 |

4 This financing statement covers the following types (or items) of property:

Collateral: EQUIPMENT
One (1) New 1979 Harper 52' Model V5 Conveyor Type Buffing Machine, S/N 79447 and One (1)
New 1979 Stud Driving Machine, S/N 7920; plus all attachments and accessories now thereon
or hereafter acquired thereto.

Equipment located at Debtor's place of business as shown in Block #1 above.

Check ☒ if covered: ☒ Proceeds of Collateral are also covered ☐ Products of Collateral are also covered  No of additional sheets presented:

Filed with: Cuyahoga County Recorder

This instrument prepared by

TENNA CORPORATION        GENERAL ELECTRIC CREDIT CORPORATION

By: _____ Treas. ___ Title    By: _____ Title ___

STANDARD FORM · UNIFORM COMMERCIAL CODE · FORM UCC-1
Approved by The Secretary of State

FILING OFFICE COPY - NUMERICAL

---

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code

| 1 Debtor(s) (Last Name First) and address(es) | 2 Secured Party(ies) and address(es) | 3 Maturity date (if any) |
|---|---|---|
| Tenna Corporation<br>19201 Cranwood Parkway<br>Cleveland, Ohio 44128 | General Electric Credit<br>Corporation<br>20545 Center Ridge Road<br>Cleveland, Ohio 44116 | 10/29/74 |

4 This financing statement covers the following types (or items) of property:

Collateral: EQUIPMENT
One (1) New 1979 Harper 52' Model V5 Conveyor Type Buffing Machine, S/N 79447 and One (1)
New 1979 Stud Driving Machine, S/N 7920; plus all attachments and accessories now thereon
or hereafter acquired thereto.

Equipment located at Debtor's place of business as shown in Block #1 above.

Check ☒ If covered: ☒ Proceeds of Collateral are also covered ☐ Products of Collateral are also covered  No. of additional sheets presented:

Filed with: Ohio Secretary of State

This instrument prepared by

TENNA CORPORATION        GENERAL ELECTRIC CREDIT CORPORATION

By: _____ Title    By: _____ Title

STANDARD FORM - UNIFORM COMMERCIAL CODE · FORM UCC-1
Approved by The Secretary of State

SECURED PARTY COPY

## EXHIBIT "S–9"

General
Electric
Credit
CORPORATION

CLEVELAND DISTRICT OFFICE                    March 25, 1980                    SUITE 420
20545 CENTER RIDGE RD.
CLEVELAND, OH. 44116
TELEPHONE (216) 333-1750

Mr. Gary D. Klubnik, Jr., Treasurer
Tenna Corporation
19201 Cranwood Parkway
Cleveland, Ohio  44128

Dear Mr. Klubnik:

Our counsel has advised us that it has been contended that the Lease
Agreement between Tenna Corporation as lessee and General Electric Credit
Corporation has lessor signed by you on October 18, 1979 and relating to a
Harper Buffing Machine, S/N 79447 and a Stud Driving Machine, S/N 7920
may be in violation of the Ohio Retail Installment Sales Act.  Our counsel
has further advised us that there is a serious question whether RISA applied
to this transaction at all.

In any case, you can be certain that no action taken by, or charge contracted
for by GECC with Tenna was done for the purpose of willfully violating the
Act.  If RISA were applicable to this transaction (a matter which we do
not admit), then argueably the principal balance should have been adjusted
to the extent of the $13,693.80 advance rental payment.  This letter shall
constitute an amendment to the Lease Agreement reducing the eighty-three (83)
monthly rental payments to 82 @ $2,318.17 and 1 @ $2,318.01 per month, the
first rental installment due December 1, 1979.  Since no rentals have been
paid, this letter shall further constitute advice of credit in the amount of
the rental reduction so specified.  Also, please find enclosed a copy of
GECC's amended proof of claim which we have caused to be filed in the
Bankruptcy Court.

We emphasize that these actions are being taken solely to show our good
faith in this matter.  Such actions are not to be looked upon as any kind of
admission that the Ohio Retail Installment Sales Act applies to this
transaction, or that GECC acted in willful violation thereof.

                              Sincerely,

                              GENERAL ELECTRIC CREDIT CORPORATION

                              Eddie Tolbert, Jr.
                              District Credit Manager

ET:bam
Enc.

Printed on 100% Recycled Paper.

EXHIBIT "S–10"

# United States District Court

For the _____Northern_____ District of _____Ohio_____

In re

    TENNA CORPORATION

                        Bankruptcy No. B79-2521_____

*Bankrupt* ·
Debtor

## AMENDED PROOF OF CLAIM

1.   [*If claimant is an individual claiming for himself*] The undersigned, who is the claimant herein, resides at **

   [*If claimant is a partnership claiming through a member*] The undersigned, who resides at **

is a member of                             , a partnership,
composed of the undersigned and
of **                             , and
doing business at **
and is authorized to make this proof of claim on behalf of the partnership.

   [*If claimant is a corporation claiming through an authorized officer*] The undersigned, who resides at **
17325 Walden Avenue, Cleveland, Ohio 44128
is the ~~Audit~~ Credit Manager        of  General Electric Credit Corporation
a corporation organized under the laws of New York
and doing business at **    20545 Center Ridge Road, Cleveland, Ohio 44116
and is authorized to make this proof of claim on behalf of the corporation.

   [*If claim is made by agent*] The undersigned, who resides at **
                      , is the agent of
   , of **                         , and is
authorized to make this proof of claim on behalf of the claimant.

2.   The bankrupt was, at the time of the filing of the petition initiating this case, and still is indebted [*or liable*] to
this claimant, in the sum of $ 128,273.08 and $8,303.81, respectively, as of 1/26/80 plus interest
thereafter at the rate of 13.69% per annum on principal balance of $123,244.20, and at

3.   The consideration for this debt [*or ground of liability*] is as follows:/ rate of 14.55% on principal bal-
     purchase money loan                   /ance of $ 8,131.99 Ε.Τ.

4.   [*If the claim is founded on writing*] The writing on which this claim is founded (or a duplicate thereof) is at-
tached hereto [~~or cannot be attached for the reason set forth in the statement attached hereto~~].

5.   [*If appropriate*]~~This claim is founded on an open account, which became [or will become] due on~~
                               ~~as shown by the itemized statement attached hereto.~~

Unless it is attached hereto or its absence is explained in an attached statement, no note or other negotiable instrument
has been received for the account or any part of it.

6.   No judgment has been rendered on the claim ~~except~~

7.   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof
of claim.

8.   This claim is not subject to any setoff or counterclaim ~~except~~

9.   No security interest is held for this claim ~~except~~ This claim is subject to a security interest
in the collateral described in the attached documentations.
[*If security interest in property of the debtor is claimed*] The undersigned claims the security interest under the writing
referred to in paragraph 4 hereof [*or under a separate writing which (or a duplicate of which) is attached hereto, or
under a separate writing which cannot be attached hereto for the reason set forth in the statement attached hereto*].
Evidence of perfection of such security interest is also attached hereto.

10.   This claim is ~~a general~~ unsecured claim, except to the extent that the security interest, if any, described in
paragraph 9 is sufficient to satisfy the claim. [*If priority is claimed, state the amount and basis thereof.*]

11.   This claim is filed as a (n)   {(Unsecured)
                            (Secured } CLAIM.
                            (Priority )

| $136,576.89 + interest |
| Total Amount Claimed |
| accruing from 1/26/80 |

Claim Number
(For Office Use Only)      Name of Creditor: General Electric Credit Corporation
                                     (*Print or Type Full Name of Creditor*)

Dated:   March 25 , 1980   Signed: _Eddie C. Alert — G. Mgr_____

*Penalty for Presenting Fraudulent Claim.* Fine of not more than $5,000 or imprisonment for not more than 5 years
or both—Title 18, U.S.C., § 152.

\* *Include all names used by bankrupt within last 6 years.*

\*\* *State post office address.* ·